UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Standby Technical Services, Inc., and
AmFed National Insurance Company,
Inc.,

Civil No. 14-1857 (DWF/BRT)

          Plaintiffs,

v.

**MEMORANDUM
OPINION AND ORDER**

F & M Agency, Inc., and John Does 1
through 10,

          Defendants.

---

Benjamin A. Johnson, Esq., Michael C. Lindberg, Esq., and Mark J. Peschel, Esq., Johnson & Lindberg, PA; and Timothy D. Crawley, Esq., Anderson Crawley & Burke PLLC, counsel for Plaintiffs.

Aaron M. Simon, Esq., and Rolf E. Sonnesyn, Esq., Tomsche Sonnesyn & Tomsche, PA, counsel for Defendant F & M Agency, Inc.

---

# INTRODUCTION

This matter is before the Court on Plaintiffs Standby Technical Services, Inc. ("Standby") and AmFed National Insurance Company, Inc.'s ("AmFed") (collectively, "Plaintiffs") Motion for Partial Summary Judgment. (Doc. No. 20.) For the reasons set forth below, the Court denies Plaintiffs' motion.

# BACKGROUND

Plaintiff Standby is an Alabama business that worked on projects to clean up and rehabilitate lands in the Mississippi and Louisiana Gulf Coast after they were devastated

by Hurricane Katrina in August 2005 ("Katrina Recovery").  (Doc. No. 1, Compl. ¶¶ 1, 8.)  Plaintiff AmFed is an insurance company based in Mississippi (*id.* ¶ 2), which provided an insurance policy to Standby.  (*See generally id.*)

On December 11, 2005, AshBritt, Inc. contracted with Standby to provide certain services for Katrina Recovery.  (Doc. No. 23 ("Peschel Aff.") ¶ 2, Ex. A.)  On January 6, 2006, Standby subcontracted with another company, Streblow Brothers Repair and Fabrication ("Streblow"), a Minnesota company, for the same work.  (Peschel Aff. ¶ 5, Ex. D.)  Streblow further subcontracted with Poo-Monkey for this work.  (*See* Peschel Aff. ¶ 6, Ex. E.)  Streblow was to provide labor and material for assisting in the removal of trees and associated debris ("Standby-Streblow Subcontract").  (*See* Peschel Aff. ¶ 5, Ex. D.)  Streblow was also to provide insurance for its laborers.  (*See id.*)

Streblow obtained a workers' compensation and employer's liability policy from Defendant F & M Agency, Inc. ("F&M"), an insurance agency based in Minnesota.  (*See* Peschel Aff. ¶ 3, Ex. B ("J. Streblow Dep.") at 35-39; *see also* Peschel Aff. ¶ 4, Ex. C; Compl. ¶ 3.)  Specifically, in late August or early September 2005, Streblow contacted Pat Nikolaisen ("Nikolaisen"), an agent with F&M, to obtain workers' compensation insurance for its Katrina Recovery-related work.  (*See* J. Streblow Dep. at 35-39.)  Streblow communicated to Nikolaisen that it would be doing Katrina Recovery-related work.  (*See id.*)  F&M obtained workers' compensation coverage through Berkley Risk Administrators Company, LLC ("Berkley Risk"), which issued a policy to cover the period of September 17, 2005 through September 17, 2006 (the "Policy").  (Peschel Aff.

¶ 4, Ex. C.)  The Policy was numbered WC-22-04-165956-00.  (*Id*.)  Streblow provided a certificate of the Policy to Standby as proof of workers' compensation insurance.  (*Id*.)

On January 16, 2006, Ron Rosa ("Rosa"), an employee of Poo-Monkey, fell out of a boom basket truck while cutting down a tree.  (*See* Peschel Aff. ¶ 6, Ex. E.)  At the time he fell, Rosa was working under the Standby-Streblow Subcontract.

In January, just after the incident, Rosa filed a workers' compensation claim with Streblow.  (*See id*.)  Rosa's claim was denied on September 11, 2006.  (*Id*; *see also* Doc. No. 29 ("Sonnesyn Aff.") ¶ 4, Ex. C.)  Berkley Risk denied coverage on the grounds that Streblow was not covered for claims by workers outside the state of Minnesota.  (Peschel Aff. ¶ 6, Ex. E.)

On August 15, 2006, Rosa sued Streblow for negligence in Mississippi Federal District Court (*Rosa v. Streblow Bros.*, Civ. No. 06-195 (S.D. Miss.) ("Mississippi Suit")).  (Peschel Aff. ¶ 7, Ex. F; Sonnesyn Aff. ¶¶ 2, 3, Exs. A, B.)  F&M was informed about the lawsuit on August 24, 2006.  (Doc. No. 41 ("Johnson Aff.") ¶ 3, Ex. N.)  On September 6, 2006, Streblow was informed that its commercial general liability policy would not cover Rosa's claims in the Mississippi Suit.  (Johnson Aff. ¶ 5, Ex. P; *see also* Johnson Aff. ¶ 6, Ex. Q.)  On September 13, 2006, Streblow moved to extend time to respond in the Mississippi Suit.  (Sonnesyn Aff. ¶ 5, Ex. D.)  Streblow filed an answer on October 20, 2006 (Sonnesyn Aff. ¶ 6, Ex. E) and an amended answer on December 12, 2006.  (Sonnesyn Aff. ¶ 7, Ex. F).  On March 30, 2007, Streblow sought defense and indemnity from Berkley on Rosa's Mississippi lawsuit.  (Sonnesyn Aff. ¶ 8, Ex. G.)  On June 1, 2007, Berkley was served with a summons in the Mississippi Suit, and it was

3

subsequently dismissed on December 6, 2007.  (Johnson Aff. ¶¶ 10, 12, Exs. V, X.)  On February 11, 2008, Streblow was dismissed from the lawsuit by an Agreed Order of Dismissal Without Prejudice.  (Doc. No. 40 ("J. Streblow Aff.") ¶ 5, Ex. Y.)

On September 12, 2007, Rosa filed a workers' compensation claim against Standby and its insurer AmFed.  (Peschel Aff. ¶ 8, Ex. G; *see also* Peschel Aff. ¶ 7, Ex. F (letter stating that if Rosa was unable to successfully recover through Streblow's general liability policy, Standby was next in line to cover Rosa).)  Standby and AmFed objected to the workers' compensation claim, but paid over $586,000 to or on behalf of Rosa for indemnity and medical benefits.  (Peschel Aff. ¶ 9, Ex. H.)  The First benefit payment issued in connection with Rosa's workers' compensation claim was dated February 25, 2009.  (Doc. No. 24 ("Swanner Aff.") ¶¶ 1-3; Peschel Aff. ¶¶ 12-14, Exs. K-1, K-2, L.)

On January 16, 2009, Standby and AmFed brought an action against Streblow in federal court in Mississippi, where they received a judgment of $604,592.03 against Streblow.  (*See* Peschel Aff. ¶¶ 9, 10, Exs. H, I.)  Judgment was entered in that matter on January 3, 2014.  (Peschel Aff. ¶ 9, Ex. H.)

On April 1, 2014, Standby and AmFed agreed to not attempt execution on the Judgment against Streblow, and Streblow assigned plaintiffs all claims it might have against F&M and others relating to Rosa's workers' compensation claims.  (See Peschel Aff. ¶ 10, Ex. I.)

Standby and AmFed commenced this lawsuit on July 16, 2014 (*see* Peschel Aff. ¶ 11, Ex. J) asserting the following claims against F&M:  (1) Breach of Contract; and (2) Negligence.  (Compl. ¶¶ 18-25.)  Plaintiffs now seek partial summary judgment based

4

on a conclusion that their negligence claim is not barred by the applicable statute of limitations. (*See generally* Doc. No. 22.)

## DISCUSSION

I.   **Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Statute of Limitations

Plaintiffs assert that the Court can and should dismiss F&M's statute of limitations defense as a matter of law with respect to Plaintiffs' negligence claim.[1] According to Plaintiffs, the question of the applicability of the statute of limitations depends on the question of when Streblow sustained "some damage." Plaintiffs assert that there is no dispute that the question is answered by the date that judgment was entered against Streblow in favor of Plaintiffs—January 3, 2014—and that their claim is not barred by the statute of limitations.

Minnesota has a six-year general statute of limitations period for "criminal conversion, or for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated." Minn. Stat. § 541.05, subd. 1 (2014). This statute has been held to be applicable to professional malpractice claims. *Ames & Fischer Co., II, LLP v. McDonald*, 798 N.W.2d 557, 562 (Minn. App. 2011). The parties agree that the six-year statute of limitations governs. Therefore, for Plaintiffs' to not be barred by the statute of limitations, Plaintiffs' claim must have accrued after July 16, 2008, which is six years prior to the date this suit was commenced.

Minn. Stat. § 541.05, subd. 1, does not specify when the statute of limitations period begins to run. However, the Supreme Court of Minnesota has held that the limitations period "begins to run when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a

---

[1] The parties appear to agree that the breach of contract claims should be dismissed. Plaintiffs state that "the plaintiffs agree that the breach of contract cause of action can be dismissed." (Doc. No. 39 at 5.)

claim upon which relief can be granted." *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006). Minnesota has adopted the so-called "damage-accrual rule," under which the statute of limitations begins to run when "some damage" has occurred. *Id.* at 335-36. Put another way, "a cause of action accrues, and the statute of limitations begins to run, on the occurrence of any compensable damages, whether specifically identified in the complaint or not." *Id.* at 336. Thus, under *Antone*, the underlying dispute does not have to be fully and finally resolved before the statute of limitations begins to run and instead can begin to run with the occurrence of any compensable damage. *See id.* The parties agree that the standard articulated in *Antone* applies here. (*See* Doc. No. 27 at 9-20; Doc. No. 39 at 7.) However, the parties dispute the point at which Streblow sustained "some damage."

Plaintiffs assert that Streblow sustained "some damage" at the time that it "became obligated to reimburse the plaintiffs' for workers' compensation benefits they had paid for Rosa's claims, that is, *upon entry of judgment* against Streblow Brothers in favor of the plaintiffs on January 3, 2014." (Doc. No. 22 at 14 (emphasis added).) Plaintiffs base this argument in part on the fact that the mere failure to obtain insurance does not in and of itself cause injury in every case.

Defendant, on the other hand, argues that when Rosa sued Streblow in Mississippi federal court, Streblow began defending the suit and likely incurred attorney fees at that time. Defendant further asserts that Streblow was arguably exposed to penalties under Mississippi laws when it failed to secure workers' compensation insurance. Defendant also claims that when Berkley denied insurance coverage, Streblow incurred "some

7

damage." Defendants contend that they require discovery to address this issue and that the motion before the Court is premature.

Here, on the issue of "some damage," because Plaintiffs' claim against F&M is an assigned claim from Streblow, the Court must consider the point at which *Streblow* sustained "some damage" for purposes of its negligence claim against F&M for failure to obtain proper workers' compensation insurance.

The parties agree that in *Antone*, the controlling case here, the Court held that accrual is with "the occurrence of any compensable damage." *Antone*, 720 N.W.2d at 336. In that case, Mr. Antone brought a legal malpractice action against his attorney for negligently drafting an antenuptial agreement, which Mr. Antone had sought in anticipation of his upcoming marriage to Ms. Schmidt. *Id.* at 332-34. Mr. Antone sought the antenuptial agreement in December 1986, was married on December 21, 1986, and petitioned for dissolution of the marriage in 1998. *Id.* In 2003, as a result of dissolution proceedings, Ms. Schmidt was awarded a portion of Mr. Antone's premarital estate. *Id.* Mr. Antone argued that he had believed that portion of his estate was protected by the antenuptial agreement. *Id.* Mr. Antone therefore brought a suit against his attorney that included claims for negligence and breach of contract and that alleged that Ms. Schmidt received more from the dissolution "than she would have received had the antenuptial agreement been drafted properly and as contemplated and explained to Antone by [his attorney]." *Id*. at 334 (internal quotations omitted).

Mr. Antone's malpractice suit was before the Minnesota Supreme Court on the district court's grant of summary judgment, in which the district court found that

8

Mr. Antone's claims were barred by the six-year statute of limitations. *Id.* at 334-35. The Supreme Court thus examined the question of when Mr. Antone's damages accrued for purposes of the statute of limitations. *See generally id.* The Court first held that Minnesota applies the damage-accrual rule which requires that "some damage" has occurred for accrual. *Id*. at 336-37. Next, the Court examined the types of damages that trigger accrual of a cause of action and the Supreme Court held that "any compensable damage, whether specifically identified in the complaint or not," qualified as "some damage"; the Court partially pointed to its past "broad interpretation" of the concept of "some damage." *Id.* at 336. Finally, in considering the case before it, the concluded that, "[Mr.] Antone suffered some damage on December 21, 1986, when he and [Ms.] Schmidt entered into their marriage." *Id.* at 338. Court reasoned that:

> the consequence of Antone marrying Schmidt without having an effective antenuptial agreement in place was that he was left without the nonmarital property protections he sought to obtain through the antenuptial agreement drafted by [his attorney]. For Antone, the consequences were both immediate and irremediable as of the date of the marriage.

*Id.* at 337. The Court continued:

> When Antone entered his marriage with Schmidt, he passed a point of no return with respect to the laws of marital and nonmarital property and he did so without the legal shield he retained [his attorney] to provide . . . Each property-related step Antone took after the date of his marriage was, unbeknownst to him, unprotected. . . . In essence, [Antone's attorney's] representations caused Antone to do something he would not have otherwise done because, from the moment the marriage was entered into, Schmidt *was legally entitled to make a claim upon a portion* of any appreciation in his premarital property. We conclude that this exposure was an injury that resulted in some damage sufficient to survive a motion to dismiss.

*Id*. at 337-38.

Here, based on the Court's analysis in *Antone*, the Court concludes that the date that Streblow suffered "some damage" was the date that Rosa "was legally entitled to make a claim upon a portion of" the workers' compensation insurance. It is this date, just like in *Antone*, that Streblow no longer had "the legal shield he retained [his insurance agent] to provide." *Id.* Also, like *Antone*, Streblow would not have agreed to cover workers' injuries by certifying that it had workers' compensation and employee liability insurance, if it had known that it was not properly protected by insurance. *Id.* at 337 (stating that Mr. Antone "would not have entered into the marriage if he had known the antenuptial agreement did not adequately protect his property interests"). Finally, like in *Antone*, it was at the moment that Streblow was in fact not protected that Streblow could have brought its claim against F&M. For purposes of this motion, the Court need not decide the exact date that Streblow was not protected—whether it was the moment it had workers in the field during the time of the applicable policy, whether it was the day Rosa was injured, whether it was the day Rosa filed a workers' compensation claim against Streblow, or even if it was the day Berkley denied the claim[2]—because each of these events occurred at some time in 2006, well before the July 16, 2008 statute of limitations date.[3][4] The date proposed by Plaintiffs, the date judgment was entered against Streblow

---

[2]    This also would include Defendant's arguments relating to statutory penalties under Mississippi law, which would have been triggered at some time in 2006. (*See* Doc. No. 27 at 12-14.)

[3]    The Court concludes that Defendant's analysis relating to the Mississippi Suit is not determinative here. That case did not involve a workers' compensation claim (*see* Doc. No. 56), and, in any event, the statute of limitations had begun to run before that case even commenced.

in 2009, essentially proposes the application of the discovery rule which has been squarely rejected by the Minnesota Supreme Court. *Id.* at 335 ("We have also rejected the discovery rule.") (internal citation omitted). In fact, the 2009 date would be analogous to the date that Ms. Schmidt was awarded a portion of the marital property as a result of the dissolution proceedings, which the Supreme Court also clearly rejected as the appropriate date for the accrual of Mr. Antone's malpractice claims. *Id.* at 333, 336-38.

This analysis further mirrors *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641 (Minn. 1999), as described in *Antone*, where "some damage" occurred to plaintiffs who had engaged in certain prohibited tax transactions, but who were not advised to avoid those prohibited tax transactions by the tax professionals upon whom they were relying, at the moment the plaintiffs were legally liable for taxes as a result of engaging in those transactions. *Id.* at 337. As the Supreme Court stated, it was at that point when the plaintiffs "could have commenced an action for legal malpractice [against the tax advisors] that would have survived a motion to dismiss for failure to state a claim." *Id.* (citing *Herrmann*, 590N.W.2d at 643-44).

---

4    The Court notes that to the extent Plaintiffs attempt to argue in their reply brief that Rosa never brought a workers' compensation claim against Streblow (*see* Doc. No. 39 at 13-15), that argument is to no avail. Plaintiffs themselves assert the opposite in their opening brief: "Rosa made a workers' compensation claim to Streblow Brothers and on September 11, 2006, Berkley Risk denied coverage of the claim because Streblow Brothers was not covered for claims by workers outside the State of Minnesota." (Doc. No. 22 at 5; *see also* Peschel Aff. ¶ 6, Ex. E.) The point that there was no coverage through Streblow's policy in 2006 stands.

Further, although the Court disagrees with Plaintiffs' conclusion, the Court notes that it agrees with Plaintiffs' argument that the "mere failure to obtain insurance obviously will not cause injury in every case" (Doc. No. 22 at 14 (citing *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 560 N.E.2d 122, 124 (Mass. App. Ct. 1990)).) This argument fits squarely with the Supreme Court's analysis in *Antone*, and the above analysis, because the date that Streblow failed to get the insurance it thought it was getting (the right antenuptial agreement in the case of *Antone*) does not trigger the statute of limitations. If Antone had never been married, his claim may never have accrued, and if no one had been injured, Streblow's claim may never have accrued.

In sum, the Court can determine as a matter of law that the statute of limitations began to run in the case sometime in 2006, which was more than six years before the commencement of this action.

## CONCLUSION

Plaintiffs' claims are barred by the statute of limitations because Plaintiffs' claims accrued at the time that the injured worker was able to seek a claim. At that time, Streblow could have asserted a claim for negligence against its insurance agent. The Court recognizes that the result in this case is particularly harsh to Plaintiffs in light of the fact that they agreed to not execute their judgment against Streblow and accepted Streblow's assigned claims, however, the Court is bound by the law as it stands here in Minnesota.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs Standby Technical Services, Inc. and AmFed National Insurance Company, Inc.'s Motion for Partial Summary Judgment (Doc. No. [20]) is **DENIED.**

Dated:  June 1, 2015          s/Donovan W. Frank
                              DONOVAN W. FRANK
                              United States District Judge